

JUN 2 9 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

Ale Amazon, Pro Se
General Delivery
Folsom, CA 95630
alexfolsomer@gmail.com

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALE AMAZON,<br><br>                    Plaintiff,<br><br>         v.<br><br>AMAZON.COM, INC.;<br>AMAZON.COM SERVICES LLC,<br>                    Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES,<br>RESTITUTION, AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>2:26-CV-2288 DAD CSK PS |

## I. JURISDICTION AND VENUE

1.     Plaintiff ALE AMAZON is a disabled non-binary citizen of the State of California. Plaintiff uses they/them/theirs pronouns.

2.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

3.     Defendant AMAZON.COM, INC. is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Defendant AMAZON.COM SERVICES LLC is a Delaware limited liability company, whose sole member is AMAZON.COM, INC. As such, AMAZON.COM SERVICES LLC is a citizen of Delaware and Washington. No member of AMAZON.COM SERVICES LLC is a citizen of California. Both entities are referred to collectively as "AMAZON."

4.     This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

AMAZON operates physical retail locations and fulfillment centers throughout California, including in the Eastern District. AMAZON's website, customer service, fraud investigation, and return systems are inextricably tied to these physical locations and facilitate access to AMAZON's goods and services. AMAZON's digital systems are used to order goods that are picked, packed, and shipped from AMAZON's physical facilities, and to return goods to AMAZON's physical return processing centers. These systems are a "service establishment" under 42 U.S.C. § 12181(7)(F) and constitute a place of public accommodation under Title III of the ADA. Plaintiff's Unruh Civil Rights Act claim is properly before this Court under supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because it forms part of the same case or controversy as Plaintiff's ADA claim.

5.      Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district. Plaintiff resides in Folsom, California. AMAZON delivered orders to Plaintiff in Folsom and in the Lake Tahoe area, which is in El Dorado County within the Eastern District of California. Plaintiff suffered economic harm, emotional distress, and physical harm in this district. AMAZON operates fulfillment centers and customer service facilities in the Eastern District of California, including facilities in the Sacramento region. AMAZON has designated Corporation Service Company (CSC Lawyers Incorporating Service) at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833 as its registered agent for service of process in California, further establishing AMAZON's physical presence in this district.

6.      The amount in controversy exceeds $75,000. AMAZON's own representative acknowledged in writing that the unauthorized charges from 2023 were approximately sixty thousand dollars ($60,000). When combined with medical and dental expenses, lost income, emotional distress damages, and punitive damages, the total amount in controversy substantially exceeds the

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

jurisdictional threshold.

**II. PARTIES**

7.      Plaintiff ALE AMAZON is a disabled non-binary individual who resides in California. Plaintiff has documented cognitive disabilities including dyslexia, cognitive processing disorders, PTSD, severe anxiety, fibromyalgia, chronic pain, memory impairment, depression, and gender dysphoria. Plaintiff uses they/them/theirs pronouns. Plaintiff has two AMAZON accounts at issue in this action. Both accounts were hijacked and used for unauthorized transactions.

8.      Defendant AMAZON.COM, INC. is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Defendant AMAZON.COM SERVICES LLC is a Delaware limited liability company that jointly operates the AMAZON platform, including its public-facing customer service, fraud dispute resolution, and refund processing systems. AMAZON operates physical fulfillment centers, return processing facilities, and customer service operations in California. AMAZON's website, customer service, fraud investigation, and return systems facilitate access to AMAZON's physical goods and services. AMAZON's systems are a service establishment under Title III of the ADA, 42 U.S.C. § 12181(7)(F). Both entities are referred to collectively as "AMAZON."

**III. FACTUAL ALLEGATIONS**

**A. Plaintiff's Severe Health Problems**

9.      In 2023 and 2024, Plaintiff suffered from severe health problems, including multiple hospitalizations for pain and dental issues requiring travel to different clinics.

10.      Plaintiff was very busy managing their health conditions, attending medical appointments, traveling to clinics, and undergoing treatment. Plaintiff had no time to monitor their AMAZON accounts during this period.

11.      Plaintiff was unable to monitor their AMAZON accounts during this period and had

-3-

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

no awareness of the unauthorized activity occurring on those accounts.

**B. Plaintiff Discovered Unauthorized Activity in Spam Folder Months Later**

12.    When Plaintiff finally recovered and began checking their email, Plaintiff was surprised to discover multiple emails in their spam folder on both accounts. The emails contained order confirmations, shipping notifications, return requests, and replacement requests for orders Plaintiff never placed.

13.    Plaintiff found these emails only months after the orders had been placed. Plaintiff had not placed these orders. Plaintiff had no knowledge of them. Plaintiff found them only because they were buried in the spam folder — not in Plaintiff's regular inbox. AMAZON's own email system treated these order confirmations as suspicious by routing them to spam. This proves the orders were irregular and suspicious, and it prevented Plaintiff from discovering them in a timely manner.

14.    Plaintiff had no knowledge of these orders. Plaintiff had not placed them. Plaintiff had not authorized them. Plaintiff had not received any items from them.

15.    Upon information and belief, the unauthorized activity was not committed by a single individual. The scale and pattern of the activity — multiple accounts, multiple orders, multiple delivery locations, multiple devices — suggests that several people were involved.

16.    AMAZON, as one of the largest online retailers in the world, has a duty to protect its customers from cybercrime. AMAZON spends over one billion dollars annually on fraud prevention. Despite these resources, AMAZON failed to protect Plaintiff's accounts.

17.    AMAZON's security systems should have detected the unusual activity. Multiple accounts, multiple orders, multiple delivery locations, and multiple devices should have triggered security alerts. AMAZON failed to act.

**C. Plaintiff Reported the Unauthorized Activity to AMAZON**

18.    When Plaintiff discovered the unauthorized activity, they immediately contacted

-4-

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

AMAZON and reported that both accounts had been hijacked.

19.     Plaintiff requested that AMAZON investigate the unauthorized transactions and restore Plaintiff's accounts.

20.     Instead of investigating, AMAZON locked both of Plaintiff's accounts. The lock lasted approximately two years — from 2023 until September 2024 for one account and January 2026 for the other account.

21.     During those two years, Plaintiff could not access their accounts. Plaintiff could not see what orders had been placed. Plaintiff could not see what returns had been processed. Plaintiff could not see what refunds had been issued.

22.     AMAZON refused to conduct any investigation. AMAZON provided no explanation for why the accounts were locked. AMAZON ignored Plaintiff's repeated requests for help.

**D. AMAZON Locked Accounts but Allowed Fraudulent Orders and Returns**

23.     Although AMAZON locked Plaintiff's accounts, AMAZON's systems continued to process and fulfill unauthorized orders. These orders were delivered to AMAZON Lockers in the Lake Tahoe area and elsewhere. Other orders were delivered to Plaintiff's home when Plaintiff was not home. These deliveries were left in the mailroom, left in front of the door, or handed to strangers. AMAZON's delivery confirmation for these orders falsely claimed the items were delivered, despite Plaintiff never receiving them. Some of these deliveries were marked as "signature required" by AMAZON, but no signature was ever obtained.

24.     The people who placed the unauthorized orders received wrong items from AMAZON's fulfillment chain. The people requested replacements for the wrong items. The people returned the wrong items to AMAZON. AMAZON received the returns but never issued refunds.

25.     Plaintiff discovered these returns only when Plaintiff checked their spam folder months later. Plaintiff's account was locked during the entire period, preventing Plaintiff from seeing

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

the orders, the wrong items, the replacements, the returns, or the refund statuses. The orders were sent to AMAZON Lockers or left unattended outside of Plaintiff's home, so Plaintiff never received any items and could not have returned them.

26.     AMAZON's security system thus allowed fraudulent orders to be fulfilled while simultaneously preventing Plaintiff from taking any corrective action.

27.     Because Plaintiff's accounts were locked, Plaintiff could not access the order history, could not view the orders, could not generate return labels, and could not initiate returns through AMAZON's normal return system.

28.     AMAZON's own return policy requires customers to log into their accounts to initiate returns. Upon information and belief, AMAZON's system places all AMAZON services on hold during an account lock.

29.     By continuing to accept and fulfill orders while blocking Plaintiff's access to the return system, AMAZON intentionally created a situation where Plaintiff could not return unauthorized items, and then threatened Plaintiff with charges for non-return.

30.     On or about October 2023, AMAZON sent Plaintiff an email stating that a return label had been created for Order #113-4318270-5303411. However, because Plaintiff's account was locked, Plaintiff could not log in to access the label. The return label was stored in Plaintiff's account — not attached to the email or mailed to Plaintiff. AMAZON refused to mail the label or provide it by any other means. By the time Plaintiff regained access to their account approximately two years later, the return label had been removed, and portions of Plaintiff's order history had been erased.

**E. AMAZON Shipped Wrong Items – The Swiss Titanium Watch (Order #113-4318270-5303411)**

31.     On October 1, 2023, Plaintiff placed Order #113-4318270-5303411 for an Oris Swiss Titanium watch in the amount of $3,322.86. AMAZON was the seller of record for this order — not a

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

third-party seller.

32.    On or about October 10, 2023, AMAZON delivered a package to Plaintiff. The package contained a Kwikset door lock, not the Swiss Titanium watch Plaintiff had ordered. AMAZON's email notification for the order stated "Your signature is required" for delivery. The UPS tracking number (1Z4327274206801027) confirmed the delivery did not require a signature. The package did not require the signature confirmation AMAZON had promised. AMAZON's product listing for the watch showed photos that did not match the item received.

33.    Upon information and belief, someone in AMAZON's fulfillment chain — either in a warehouse or during AMAZON's transportation services — stole the Swiss Titanium watch and replaced it with a cheap door lock. This pattern of theft and substitution is a documented problem in AMAZON's fulfillment centers and transportation services.

34.    On October 12, 2023, Plaintiff immediately notified AMAZON that the wrong item was received. Plaintiff received only an automated response.

35.    On October 19, 2023, Plaintiff provided AMAZON with the UPS tracking number for the package AMAZON had shipped (1Z4327274206801027) to prove that the package contained a door lock, not the watch, and that the delivery lacked the promised signature confirmation.

36.    On October 20, 2023, AMAZON falsely responded: "We are currently working with your card issuer to resolve this dispute." This statement was false because Plaintiff had requested a refund for a wrong item and had not yet filed any chargeback. When Plaintiff later filed a chargeback with the card issuer at AMAZON's direction, AMAZON provided false or misleading information to the bank, which caused the chargeback to be denied and resolved in AMAZON's favor. The bank's decision was based on the false information AMAZON provided. AMAZON never actually worked with the card issuer as it had claimed. AMAZON thus profited from both the merchandise and

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

Plaintiff's funds, while the bank's denial insulated AMAZON from liability.

37.    AMAZON investigated the watch order. AMAZON confirmed that the watch was stolen from AMAZON's fulfillment chain and replaced with a door lock. AMAZON issued a refund of $3,322.86 on January 24, 2025 — approximately fifteen months after Plaintiff notified AMAZON of the theft and substitution. The refund is not reflected in Plaintiff's account history.

38.    The refund for the watch proves that AMAZON has the ability to investigate and verify theft and substitution in its fulfillment chain. For all other unauthorized orders, AMAZON refused to conduct any investigation.

**F. AMAZON Has a Systemic Problem with Theft and Wrong Items**

39.    Upon information and belief, Plaintiff's experience with the watch is not isolated. AMAZON has a well-documented pattern of systemic theft and fraud occurring in its fulfillment centers and transportation services. The unauthorized orders placed on Plaintiff's accounts also involved wrong items being shipped to lockers, replacements requested, returns made, and refunds never issued — mirroring the pattern of AMAZON's fulfillment failures.

40.    AMAZON's return verification system routinely fails to detect these swaps. Sellers report that they receive wrong items back and AMAZON denies their claims for reimbursement, claiming the correct item was returned.

41.    AMAZON is aware of these systemic issues but does nothing to address them.

42.    AMAZON has admitted to a systematic pattern of wrongfully denying refunds. AMAZON agreed to a historic settlement valued at over $309 million to resolve these claims in *In re: Amazon Return Policy Litigation,* Case No. 2:23-cv-01372-JNW (W.D. Wash.). Under the settlement terms submitted for preliminary approval on January 23, 2026, to United States District Judge Jamal N. Whitehead, AMAZON is establishing a $309.5 million non-reversionary common fund to compensate class members who were wrongly denied refunds, were not issued "timely or correct"

-8-

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

refunds, or were later charged despite returning items.

43.    Following this litigation, AMAZON's corporate practices came under intense judicial scrutiny. In a ruling forcing discovery, the Court ordered AMAZON to produce internal communications regarding its failures to verify that the correct items had been sent back by customers. AMAZON's own internal review admitted to "a small subset of returns where we issued a refund without the payment completing, or where we could not verify that the correct item had been sent back to us, so no refund had been issued."

44.    Plaintiff's experience is consistent with this pattern. For the watch order, AMAZON investigated and refunded because the theft was proven. For all other unauthorized orders, AMAZON refused to investigate, falsely claimed "no access," erased order history, and denied refunds.

### G. The Chargeback Trap

45.    AMAZON repeatedly advised Plaintiff to dispute charges with their bank. Plaintiff filed disputes with their bank at AMAZON's direction, believing this would lead to a fair resolution.

46.    However, the bank's decisions on chargeback disputes are based on information provided by AMAZON. AMAZON provided false and misleading information to the bank, including misrepresentations about the transactions, the items, and Plaintiff's account activity.

47.    The bank denied Plaintiff's disputes based on AMAZON's false information. AMAZON then refused to refund Plaintiff, claiming the bank's decision was final, despite knowing that the bank's decision was based on false information that AMAZON had provided.

48.    AMAZON thus profited from both the merchandise and Plaintiff's funds, while the bank's denial insulated AMAZON from liability and prevented Plaintiff from obtaining any recourse through the chargeback process.

49.    This practice constitutes an unfair and deceptive practice. AMAZON knew that advising customers to dispute charges would result in denial because AMAZON controls the

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

information provided to the bank.

**H. Two BBB Complaints – Two Accounts**

50.    On or about November 14, 2025, and April 7, 2026, Plaintiff filed two separate BBB complaints (IDs 23726101 and 24337333) regarding two different AMAZON accounts.

51.    For both accounts, AMAZON responded substantively through its BBB resolution team, proving AMAZON had full access to both accounts.

52.    Despite this access, AMAZON refused to investigate the unauthorized transactions for Account 1, while for Account 2, AMAZON investigated the watch theft and issued a refund after a two-year delay. This differential treatment proves AMAZON deliberately refused to investigate Account 1 while selectively investigating Account 2. AMAZON's own BBB responses show AMAZON knew of the fraud and chose not to act.

53.    AMAZON representative Vishal, via BBB Complaint #23726101, advised Plaintiff to work with their bank and provide documentation of unauthorized transactions. AMAZON knew this was impossible because AMAZON had locked Plaintiff's account, preventing access to order history and transaction records. This advice was a deliberate attempt to create the appearance of cooperation while ensuring Plaintiff could not comply.

54.    AMAZON representative Srujan, via BBB Complaint #24337333, admitted receipt of a returned item and promised a refund by April 17, 2026. AMAZON issued the refund on April 16, 2026, but then sent a false "Reminder to Return" email threatening to charge Plaintiff after the refund was already issued.

**I. AMAZON Erased Portions of Plaintiff's Order History**

55.    When AMAZON finally restored access to Plaintiff's accounts, portions of Plaintiff's order history had been erased. AMAZON had deleted the records of what happened.

56.    Plaintiff only knows about the full scope of the unauthorized activity because Plaintiff

-10-

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

saved emails and screenshots before AMAZON deleted the records.

57.    AMAZON's deletion of order history after Plaintiff reported the unauthorized activity constitutes spoliation of evidence.

58.    On May 15, 2026, AMAZON representative Srujan falsely stated in writing to the BBB: "AMAZON does not erase order history from customer accounts." This statement was false when made because portions of Plaintiff's order history had already been deleted by AMAZON following Plaintiff's reports of unauthorized activity.

**J. AMAZON's Spoliation of Evidence**

59.    AMAZON's deletion of Plaintiff's order history occurred after Plaintiff notified AMAZON of unauthorized account activity. Beginning in 2023, Plaintiff repeatedly notified AMAZON customer service departments of unauthorized activity. AMAZON's customer service representatives had actual knowledge of Plaintiff's claims.

60.    Despite this knowledge, AMAZON failed to implement a litigation hold or suspend its document retention policies. Instead, AMAZON's customer service departments:

a. Removed portions of Plaintiff's order history from Plaintiff's account;

b. Blocked Plaintiff's access to their accounts, preventing Plaintiff from viewing orders, initiating returns, or generating return labels; and

c. Failed to preserve Plaintiff's records, despite knowing that Plaintiff was attempting to investigate unauthorized activity.

61.    Under federal law, a party's duty to preserve evidence is triggered when it knows or reasonably should know that the evidence may be relevant to pending or future litigation. AMAZON had actual notice of Plaintiff's claims in 2023.

62.    AMAZON's deletion of portions of Plaintiff's order history constitutes spoliation of evidence. Plaintiff requests that the Court issue an adverse inference instruction pursuant to Federal

-11-

Rule of Civil Procedure 37(e) at the appropriate time.

63.    AMAZON's failure to preserve Plaintiff's records, and its active deletion of those records, was intentional, done in bad faith, and designed to conceal evidence of its wrongdoing.

**K. AMAZON Claimed Returns Were Not Received Despite Tracking Confirming Delivery**

64.    For many orders, tracking numbers confirmed delivery to AMAZON's returns centers. Despite UPS tracking showing delivery, AMAZON's order status falsely stated: "Your refund will be processed when we receive your item."

65.    Plaintiff provided AMAZON with tracking numbers proving delivery. AMAZON ignored this evidence and continued to claim the returns were not received.

66.    The same pattern occurred on a 2026 order. On April 7, 2026, AMAZON representative Srujan admitted to the BBB that the return was delivered and promised a refund by April 17, 2026. AMAZON issued the refund on April 16, 2026.

67.    On May 10, 2026, AMAZON sent a "Reminder to Return" email falsely claiming it was still waiting to receive the return and threatening to charge Plaintiff. This statement was false when made because AMAZON had already admitted receipt in writing, UPS tracking confirmed delivery, and AMAZON had already issued the refund.

**L. AMAZON's Arbitration Clause and Waiver**

68.    AMAZON's Content Usage Terms contain a binding arbitration clause governing disputes relating to content Plaintiff uploaded to AMAZON's platform, including product reviews, photos, and social media content. Plaintiff's claims arise from AMAZON's failure to refund returned items, shipping wrong items, and account lockouts — issues governed by the general Conditions of Use, not the Content Usage Terms. The Content Usage Terms arbitration clause does not cover Plaintiff's claims.

-12-
COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

69.     In 2024, Plaintiff attempted to resolve this dispute by filing a Demand for Arbitration with the American Arbitration Association (Case No. 01-24-0007-9758), pursuant to the arbitration policy available on AMAZON's website at that time.

70.     On November 8, 2024, the AAA issued a formal determination declining to administer the arbitration because AMAZON failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol and the Consumer Arbitration Rules, including the Costs of Arbitration, and/or removed itself from the Consumer Clause Registry.

71.     Under AAA Consumer Arbitration Rule R-1(d), "should the AAA decline to administer arbitration, either party may choose to submit its dispute to the appropriate court for resolution." On November 8, 2024, the AAA issued a formal administrative determination under this exact rule, explicitly declining to administer Case No. 01-24-0007-9758 due to AMAZON's failure to maintain compliance with the Consumer Due Process Protocol and Costs of Arbitration.

72.     AMAZON's material failure to comply with AAA requirements and its resulting removal from the Consumer Clause Registry constitutes an absolute waiver of any right to compel arbitration under established Ninth Circuit precedent. Pursuant to the AAA's explicit authorization under Rule R-1(d), Plaintiff is fully entitled to pursue this action in a court of competent jurisdiction.

**M. Bank Account Closure**

73.     The unauthorized transactions drained Plaintiff's bank accounts. Plaintiff's bank held Plaintiff responsible for the disputed charges and closed all of Plaintiff's bank accounts. The loss of banking services caused additional economic harm, including inability to manage finances, damage to Plaintiff's creditworthiness, and associated fees and costs.

74.     AMAZON knew or should have known that Plaintiff's bank accounts were closed. AMAZON nevertheless advised Plaintiff to make claims to closed accounts, knowing this was impossible.

**N. Emails to AMAZON CEO Andy Jassy and Former CEO Jeff Bezos**

75.    On November 12, November 14, November 22, November 26, November 27, December 5, and December 23, 2025, Plaintiff sent detailed written notices of the unauthorized transactions, account lockouts, erased history, theft in AMAZON's fulfillment chain, and AMAZON's refusal to investigate directly to AMAZON CEO Andy Jassy (ajassy@amazon.com) and former CEO Jeff Bezos (jeff@amazon.com).

76.    These emails placed AMAZON's senior leadership on actual notice of the full scope of the misconduct. Andy Jassy, as Chief Executive Officer of AMAZON.COM, INC., is a managing agent with substantial authority over decisions regarding customer service, fraud investigation, and refund policies. Jeff Bezos, as Executive Chairman of AMAZON.COM, INC., is a managing agent with substantial authority over corporate strategy and customer relations.

77.    Despite this actual notice, neither Jassy nor Bezos nor any member of AMAZON's executive leadership directed any investigation, issued any corrective instruction, or took any action to address the misconduct. This deliberate inaction, after actual notice of ongoing fraud, account lockouts, erasure of customer records, and refusal to issue refunds, constitutes ratification of the wrongful conduct by senior officers and managing agents of AMAZON, satisfying the requirements of Civil Code § 3294(b) for imposition of punitive damages against the corporate entity.

78.    On November 26, 2025, Plaintiff sent an email to AMAZON CEO Andy Jassy and former CEO Jeff Bezos providing UPS tracking numbers confirming delivery of returned items, including tracking numbers for eight cell phones (1Z67561Y9030665032), a Sony Walkman player (1Z67561Y9026497704), and Casio watches (1ZT39T369041174316), as well as a formal request for AMAZON to process the outstanding refunds. AMAZON never responded to this email.

**O. AMAZON's Differential Treatment: One Investigation, Many Refusals**

79.    The refund for Order #113-4318270-5303411 proves that AMAZON has the ability to

-14-

investigate and verify theft and substitution in its fulfillment chain. AMAZON conducted a full investigation, confirmed the watch was stolen and replaced with a door lock, and issued a refund.

80. For all other unauthorized orders, AMAZON refused to conduct any investigation. AMAZON claimed it "had no access" to Plaintiff's accounts — a claim later proven false when AMAZON representative Srujan accessed Plaintiff's 2023 order history and provided order numbers, and when AMAZON's BBB team responded substantively to complaints about both accounts.

81. This differential treatment proves that AMAZON's refusal to investigate the other unauthorized orders was not due to inability — it was a deliberate choice to avoid liability.

82. Upon information and belief, the unauthorized orders involved the same pattern of theft and substitution that occurred with the watch order. AMAZON's refusal to investigate, its erasure of order history, and its false claims of "no access" were intentional efforts to conceal the scope of the theft and avoid refunding Plaintiff.

**P. AMAZON's Conduct Is a Continuing Violation**

83. AMAZON's conduct is ongoing. It continues to send false and threatening emails (May 10, 2026), continues to deny refunds, continues to make false statements to the BBB (May 15, 2026), and continues to cause Plaintiff ongoing physical and emotional harm.

84. Each new threatening communication triggers a new stress response, causing new injury. The severity of the emotional distress is measured by both intensity and duration.

**Q. Plaintiff's Prior State Court Action and AMAZON's Procedural Conduct**

85. Plaintiff previously filed an action against AMAZON in Superior Court of California, County of Sacramento (Case No. 25CV012529), which was dismissed on procedural grounds without reaching the merits. Plaintiff's claims in this action are independent of that dismissal and challenge AMAZON's ongoing conduct. This action does not seek review of any state court judgment.

86. During the Superior Court of California, County of Sacramento proceedings, Plaintiff

-15-

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

experienced procedural difficulties:

a. Service Issues. Plaintiff attempted to serve AMAZON's counsel through the Sacramento County Sheriff's Department. AMAZON's counsel did not accept service. On June 18, 2025, AMAZON filed a "Notice of Unauthorized Filing by Vexatious Litigant, Automatic Stay, and Pending Automatic Dismissal Pursuant to CCP § 391.7(c)." This notice was not properly served on Plaintiff. Because Plaintiff was not properly served, Plaintiff was unable to file a VL-110 request to obtain an order from the presiding judge permitting the filing, as required under CCP § 391.7(c). Plaintiff has requested to be permitted to file upon being properly served, but has been denied.

b. Use of Personal Information. AMAZON's court filings referenced Plaintiff's immigration status, deportation history, and residential address. Plaintiff believes these references were intended to intimidate Plaintiff.

c. Procedural Outcome. The Superior Court of California, County of Sacramento dismissed Plaintiff's case without reaching the merits. The dismissal was entered as an unsigned minute order. Plaintiff filed a timely Notice of Appeal, but the clerk failed to forward it to the Court of Appeal. The Court of Appeal confirmed they never received it.

87.     Plaintiff has no adequate remedy in state court. The state court dismissed Plaintiff's case without reaching the merits, the clerk failed to forward Plaintiff's appeal, and the Court of Appeal confirmed they never received it.

88.     The state court's dismissal of Plaintiff's case without reaching the merits and without proper service is consistent with AMAZON's pattern of procedural conduct. Plaintiff's claims in this action are independent of that dismissal. Plaintiff is now pursuing this action in federal court to obtain a fair hearing on the merits, which the state court denied.

**R. AMAZON's Misgendering of Plaintiff**

89.     During the course of AMAZON's communications with Plaintiff, AMAZON

-16-
COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

representatives repeatedly used incorrect pronouns ("he/him/his") and failed to use proper honorifics when referring to Plaintiff. Plaintiff had explicitly communicated their preferred pronouns ("they/them/theirs") to AMAZON through multiple channels, including customer service communications and written correspondence.

90.    Despite this knowledge, AMAZON continued to misgender Plaintiff. This refusal to use Plaintiff's correct pronouns and honorifics is part of a broader pattern of AMAZON's discriminatory treatment of Plaintiff, including its refusal to accommodate Plaintiff's documented disabilities, its use of Plaintiff's immigration status against Plaintiff.

91.    AMAZON's deliberate misgendering has caused Plaintiff severe emotional distress and humiliation, contributing to the exacerbation of Plaintiff's documented anxiety and depression.

**S. Plaintiff's Formal Notices to AMAZON**

92.    On May 15, 2026, Plaintiff sent a formal notice of claims to AMAZON's Executive Customer Relations team, with copies to Jeff Bezos and Andy Jassy. The notice identified violations of the California Consumer Legal Remedies Act, breach of contract, fraud, intentional infliction of emotional distress, conversion, and unjust enrichment. The notice demanded correction and preservation of evidence.

93.    AMAZON responded substantively on May 15, 2026, through its BBB resolution team (Srujan). AMAZON acknowledged receipt of the notice but failed to provide any remedy.

94.    On June 22, 2026, Plaintiff sent a second formal notice of violations pursuant to California Civil Code § 1782(a) to AMAZON's counsel, K&L Gates LLP (Kevin Asfour), and to AMAZON CEO Andy Jassy and Founder/Executive Chairman Jeff Bezos. The notice demanded correction within thirty (30) days and warned of impending litigation.

95.    AMAZON has failed to correct the violations identified in either notice.

**T. AMAZON's Retaliatory Response to CLRA Notice**

-17-
COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

96.    On June 22, 2026, Plaintiff sent a formal notice of violations pursuant to California Civil Code § 1782(a) to AMAZON's counsel, Kevin Asfour of K&L Gates LLP, and to AMAZON CEO Andy Jassy and Founder/Executive Chairman Jeff Bezos.

97.    On June 25, 2026, AMAZON's counsel responded to Plaintiff's CLRA notice by threatening to file a motion for sanctions under California Code of Civil Procedure § 128.7 in Superior Court of California, County of Sacramento Case No. 25CV012529. AMAZON's counsel did not address the CLRA violations identified in Plaintiff's notice. AMAZON's counsel did not offer any corrective action. Instead, AMAZON's counsel attempted to intimidate Plaintiff by threatening sanctions in a case that was dismissed on June 30, 2025.

98.    The Superior Court of California, County of Sacramento case was dismissed on June 30, 2025, by operation of California Code of Civil Procedure § 391.7(c). The dismissal was entered through an unsigned minute order on July 10, 2025. Under California Code of Civil Procedure § 581d, a dismissal must be in the form of a written order signed by the court. The unsigned minute order is not a valid judgment. *Blauser v. Dubin* (2024) 106 Cal.App.5th 918.

99.    AMAZON's counsel demanded that Plaintiff withdraw a Motion for Reconsideration filed on April 29, 2026, and refrain from filing any further papers in the case. AMAZON's counsel threatened to file the motion for sanctions if Plaintiff did not comply.

100.    AMAZON's counsel responded to Plaintiff's June 22, 2026 CLRA notice by threatening to file a motion for sanctions in the state court action (Sacramento Superior Court Case No. 25CV012529), a case that had already been dismissed on June 30, 2025. AMAZON's counsel served this threat by email. Plaintiff never consented to electronic service under California Rules of Civil Procedure, Rule 2.251. This sanctions threat is evidence of AMAZON's pattern of using procedural tactics to harass and intimidate rather than addressing the merits of Plaintiff's claims.

-18-

101.    Plaintiff contacted Amazon's counsel multiple times in an attempt to negotiate a proper settlement of the claims in this action. Despite Plaintiff's repeated efforts to resolve this matter without litigation, Amazon refused to engage in meaningful settlement discussions and instead continued to use procedural tactics to avoid addressing the merits of Plaintiff's claims. Amazon's refusal to negotiate in good faith, combined with its threats of sanctions in a dismissed case, demonstrates Amazon's bad faith and its pattern of using procedural tactics to harass and intimidate Plaintiff rather than resolving the dispute on the merits.

102.    Plaintiff has filed a Motion for Reconsideration in the Superior Court of California, County of Sacramento case to address the due process violations in that case, including:

a. The unsigned dismissal order in violation of CCP § 581d and *Blauser v. Dubin*;

b. The court's denial of Plaintiff's ADA accommodation request with false reasons, in violation of California Rules of Court, Rule 1.100 and *Biscaro v. Stern* (2010) 181 Cal.App.4th 702;

c. The court's failure to verify Plaintiff's identity; and

d. The clerk's failure to forward Plaintiff's timely Notice of Appeal to the Court of Appeal, in violation of California Rules of Court, Rule 8.100(e)(1).

103.    Amazon's counsel has repeatedly harassed Plaintiff by labeling Plaintiff a vexatious litigant in an attempt to intimidate and discourage Plaintiff from pursuing legitimate claims. This label is based on a 2009 false prefiling order that Plaintiff is currently challenging in federal court. The validity of that order is being challenged on grounds of fraud upon the court.

### IV. AMAZON'S CONDUCT CAUSED SEVERE, ONGOING PHYSICAL AND EMOTIONAL HARM

104.    AMAZON's refusal to investigate, its false promises, its decision to lock Plaintiff's accounts for approximately two years while continuing to process fraudulent orders, its erasure of Plaintiff's order history, its false statements, its threats to charge Plaintiff, its systemic practice of

shipping wrong items and denying refunds, its advice to file chargeback disputes knowing they would be denied, its differential treatment in investigating only one order while refusing to investigate all others, its retaliatory account closure, its fifteen-month delay in refunding the watch, its procedural conduct in state court, its repeated misgendering of Plaintiff, and its retaliatory sanctions threat in response to Plaintiff's CLRA notice — all have caused Plaintiff severe and chronic stress that began in 2023 and continues to the present.

105. Each new false or threatening email from AMAZON triggers a new stress response, causing new and ongoing injury to Plaintiff's physical and mental health.

106. The chronic stress caused by AMAZON's conduct has manifested in documented physical injuries, including:

a. Dental Deterioration. Chronic stress triggered severe bruxism (teeth grinding), fracturing dental work and exposing nerves. Elevated cortisol suppressed immune function, accelerating periodontitis and alveolar bone loss. Plaintiff's dental records document root canal failures, gum inflammation, and repeated endodontist visits directly following AMAZON's false and threatening communications.

b. Joint and Musculoskeletal Deterioration. Sustained emotional distress triggered systemic inflammatory cascades (elevated IL-6 and TNF-alpha), accelerating cartilage degradation. Persistent muscle guarding from chronic anxiety pulled joints out of alignment, exacerbating Plaintiff's preexisting fibromyalgia and chronic pain. Plaintiff required hospitalization for pain crises directly triggered by AMAZON's conduct.

c. Abdominal Pain and Gastrointestinal Dysfunction. AMAZON's conduct activated Plaintiff's gut-brain axis, causing severe abdominal pain, cramping, and functional gastrointestinal distress. Plaintiff required hospitalization for abdominal pain crises.

-20-
COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

d. Chronic Headaches. AMAZON's false and threatening communications triggered severe, prolonged tension headaches and neurovascular migraines.

e. Cognitive Decline. Elevated cortisol from chronic stress impaired hippocampal function, exacerbating Plaintiff's documented cognitive processing disorders and memory impairment. Plaintiff's ability to process information and organize thoughts has been severely degraded.

f. Exacerbation of Preexisting Conditions. AMAZON's conduct worsened Plaintiff's documented fibromyalgia, chronic pain syndrome, PTSD, anxiety, depression, and cognitive processing disorders.

107.    AMAZON's conduct substantially exacerbated Plaintiff's preexisting conditions, and the harm is ongoing. Each threatening communication from AMAZON triggers a new stress response, causing renewed inflammation, pain, and cognitive deterioration.

108.    Under established California law, a defendant takes the plaintiff as they find them. AMAZON is liable for the full extent of the exacerbation of Plaintiff's preexisting conditions.

## V. AMAZON'S CONDUCT CAUSED ECONOMIC DAMAGES

109.    As a direct and proximate result of AMAZON's conduct, Plaintiff has suffered and continues to suffer severe and ongoing harm.

110.    Plaintiff has suffered substantial economic losses. AMAZON's own representative acknowledged in writing that the unauthorized charges from 2023 were approximately sixty thousand dollars ($60,000). AMAZON erased portions of Plaintiff's order history, meaning the actual total is higher than what is currently visible.

111.    Economic losses include:

a. Unrefunded charges on unauthorized orders totaling approximately $60,000;

b. Harm caused by AMAZON's unreasonable delay in refunding the watch order, including loss of use of $3,322.86 for approximately fifteen months;

-21-
COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

c. Costs of dental procedures necessitated by stress-induced dental failures;

d. Hospitalization costs for stress-induced pain crises;

e. Costs of medical treatment for stress-exacerbated conditions;

f. Lost income and reduced earning capacity;

g. Damage to Plaintiff's banking relationships and creditworthiness.

**VI. CAUSES OF ACTION**

**COUNT ONE: CONVERSION**

112.    Plaintiff repeats and re-alleges paragraphs 1 through 111 as if fully set forth herein.

113.    AMAZON wrongfully exercised dominion and control over Plaintiff's tangible personal property by:

a. Retaining the door lock after Plaintiff returned it, without issuing a refund;

b. Converting cash refunds to gift card credit without Plaintiff's consent.

114.    Plaintiff requests damages for the value of the converted property.

**COUNT TWO: BREACH OF CONTRACT**

115.    Plaintiff repeats and re-alleges paragraphs 1 through 114 as if fully set forth herein.

116.    AMAZON's Conditions of Use constitute a binding contract. Plaintiff accepted AMAZON's Conditions of Use when Plaintiff created Plaintiff's AMAZON.COM accounts and made purchases through the AMAZON platform. AMAZON breached this contract by:

a. Failing to issue refunds for returned items;

b. Shipping wrong items;

c. Failing to provide access to order history;

d. Failing to provide return labels for wrong items;

e. Unreasonably delaying refunds for returned items (including an approximately fifteen-month delay for the watch order).

-22-

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

117. Plaintiff performed all conditions precedent.

118. Plaintiff requests damages.

**COUNT THREE: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

119. Plaintiff repeats and re-alleges paragraphs 1 through 118 as if fully set forth herein.

120. Every contract in California contains an implied covenant of good faith and fair dealing. AMAZON exercised its discretionary powers under the contract in bad faith by:

a. Locking Plaintiff's accounts for two years while continuing to process and fulfill unauthorized orders;

b. Advising Plaintiff to dispute charges on closed bank accounts;

c. Falsely characterizing returns as chargeback disputes;

d. Erasing order history;

e. Threatening to charge Plaintiff for items already returned and already refunded;

f. Investigating only one order while refusing to investigate all other unauthorized orders;

g. Delaying the watch refund by approximately fifteen months without justification;

h. Retaliating against Plaintiff by closing their account immediately after they provided evidence of unrefunded returns.

121. Plaintiff requests damages.

**COUNT FOUR: FRAUD AND DECEIT**
(California Civil Code Sections 1709-1710)

122. Plaintiff repeats and re-alleges paragraphs 1 through 121 as if fully set forth herein.

123. On multiple occasions, AMAZON representatives falsely promised Plaintiff that AMAZON would investigate, escalate, and follow up on Plaintiff's reports of unauthorized account activity. These promises were false when made because AMAZON never intended to conduct any meaningful investigation.

-23-
COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

124.    On or about October 20, 2023, AMAZON falsely stated: "We are currently working with your card issuer to resolve this dispute." While Plaintiff later filed a chargeback with the card issuer, the dispute was resolved in AMAZON's favor. AMAZON provided false or misleading information to the card issuer that caused the chargeback to be denied. AMAZON then refused to refund Plaintiff, claiming the bank's decision was final, despite knowing that the bank's decision was based on false information that AMAZON had provided. AMAZON therefore profited from both the merchandise and Plaintiff's funds, while the bank's denial insulated AMAZON from liability.

125.    On or about May 10, 2026, AMAZON sent Plaintiff a "Reminder to Return" email falsely stating that AMAZON was still waiting to receive the return. This statement was false when made because AMAZON had already admitted receipt to the BBB on April 7, 2026, UPS tracking confirmed delivery, and AMAZON had already issued the refund.

126.    On or about May 15, 2026, AMAZON representative Srujan falsely stated in writing: "AMAZON does not erase order history from customer accounts." This statement was false when made because portions of Plaintiff's order history had already been deleted by AMAZON following Plaintiff's reports of unauthorized activity.

127.    AMAZON falsely claimed it "had no access" to Plaintiff's accounts. This statement was false when made because AMAZON always retains full access to all customer accounts and order histories, and AMAZON representative Srujan later accessed Plaintiff's 2023 order history and provided specific order numbers.

128.    AMAZON falsely advised Plaintiff to dispute charges with their bank, knowing that the bank's decision would be based on false information provided by AMAZON and that Plaintiff would be denied.

129.    AMAZON representative Vishal, via BBB Complaint #23726101, falsely advised

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

Plaintiff to provide documentation to their bank while AMAZON had locked their account, knowing this was impossible.

130.    Plaintiff justifiably relied on AMAZON's false representations by waiting for investigations that never occurred, refraining from timely escalation, continuing to search for records that had already been deleted, filing chargeback disputes that were denied based on AMAZON's false information, and suffering prolonged stress that exacerbated their documented disabilities. Plaintiff's reliance caused them to forgo other avenues of redress and suffer emotional and physical harm.

131.    Plaintiff requests compensatory and punitive damages.

## COUNT FIVE: NEGLIGENCE

132.    Plaintiff repeats and re-alleges paragraphs 1 through 131 as if fully set forth herein.

133.    AMAZON owed Plaintiff a duty of care to maintain reasonable security measures on its platform, to investigate reports of unauthorized access in good faith, to ship correct items, to process returns properly, to issue refunds for returned items in a timely manner, and not to engage in conduct that would foreseeably cause harm to a vulnerable customer.

134.    AMAZON breached this duty.

135.    The emotional distress and physical harm Plaintiff suffered were foreseeable consequences of AMAZON's negligence, particularly given Plaintiff's documented disabilities.

136.    Plaintiff requests compensatory damages.

## COUNT SIX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

137.    Plaintiff repeats and re-alleges paragraphs 1 through 136 as if fully set forth herein.

138.    AMAZON assumed a specific duty to handle Plaintiff's accounts, fraud investigation, and dispute resolution process with care, upon which Plaintiff specifically relied. This created a preexisting relationship that gave rise to a duty to avoid causing severe emotional distress. AMAZON, as a service provider with access to Plaintiff's sensitive personal and financial

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

information, owed Plaintiff a duty to avoid conduct that would foreseeably cause severe emotional distress.

139.   AMAZON breached this duty. AMAZON's negligent conduct caused Plaintiff severe emotional distress, which also resulted in documented physical injuries, including dental deterioration, joint deterioration, and hospitalization for pain crises.

140.   Plaintiff requests compensatory damages.

**COUNT SEVEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

141.   Plaintiff repeats and re-alleges paragraphs 1 through 140 as if fully set forth herein.

142.   AMAZON's conduct was extreme and outrageous. AMAZON:

a. Locked Plaintiff's accounts for approximately two years while continuing to process fraudulent orders;

b. Erased Plaintiff's order history after notice of the dispute;

c. Repeatedly made false promises of investigation;

d. Sent false and threatening emails;

e. Shipped wrong items (Kwikset lock instead of Swiss Titanium watch) and refused refunds;

f. Advertised "signature required" for delivery but delivered without signature;

g. Advised Plaintiff to file chargeback disputes knowing they would be denied;

h. Falsely characterized returns as chargeback disputes to avoid liability;

i. Threatened to charge Plaintiff for items already returned and already refunded;

j. Falsely claimed "no access" to Plaintiff's accounts;

k. Investigated only one order (the watch) while refusing to investigate all other unauthorized orders;

l. Delayed the watch refund by approximately fifteen months without justification;

m. Retaliated against Plaintiff by locking their account immediately after they provided

evidence of receiving wrong items and were not refunded for the return;

n. Ignored repeated emails to its CEO and former CEO, evidencing conscious disregard;

o. Repeatedly misgendered Plaintiff (using "he/him/his") despite knowing Plaintiff's correct pronouns ("they/them/theirs"), causing humiliation and emotional distress.

143. AMAZON knew of Plaintiff's documented disabilities and vulnerability. AMAZON's senior leadership, including CEO Andy Jassy, had actual notice of the misconduct and failed to take corrective action, evidencing conscious disregard for Plaintiff's rights.

144. AMAZON's extreme and outrageous conduct caused Plaintiff severe emotional distress that manifested in documented physical injuries, including dental deterioration, joint and musculoskeletal deterioration, abdominal pain, chronic headaches, cognitive decline, and exacerbation of preexisting conditions including fibromyalgia, PTSD, anxiety, and depression. Plaintiff's dental records, medical records, and treating physicians document these injuries.

145. As a direct result of AMAZON's conduct, Plaintiff has suffered severe emotional distress, physical harm, and exacerbation of preexisting conditions. The harm is ongoing.

146. Plaintiff requests compensatory and punitive damages.

**COUNT EIGHT: VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
(Civil Code Section 1770(a))

147. Plaintiff repeats and re-alleges paragraphs 1 through 146 as if fully set forth herein.

148. AMAZON violated California Civil Code § 1770(a)(5) by misrepresenting the characteristics, standards, or qualities of its return verification system and by representing that refunds would be issued when they were not.

149. AMAZON violated California Civil Code § 1770(a)(14) by representing that a transaction conferred rights, remedies, or obligations that it did not have, including by falsely

-27-

claiming it was "working with the card issuer" when no such action was being taken, and by threatening to charge Plaintiff for items already returned and already refunded.

150. AMAZON violated California Civil Code § 1770(a)(7) by representing that goods or services were of a particular standard, quality, or grade when they were of another, including by shipping a Kwikset door lock instead of an Oris Swiss Titanium watch.

151. Plaintiff provided formal notice pursuant to California Civil Code § 1782(a) on May 15, 2026, and again on June 22, 2026. AMAZON responded substantively on May 15, 2026, acknowledging receipt but failing to provide any remedy. More than thirty (30) days have elapsed since the May 15, 2026 notice, and AMAZON has failed to correct the violations identified therein. Plaintiff seeks only injunctive relief under this count at this time. Pursuant to Civil Code § 1782(d), no pre-suit notice is required for a claim seeking injunctive relief. Plaintiff reserves the right to amend to include a request for damages after proper notice and the expiration of the 30-day period.

152. AMAZON violated California Civil Code § 1770(a)(19) by inserting an unconscionable provision in its terms of service, including the arbitration clause that AMAZON itself refused to comply with, and by engaging in unconscionable conduct in its administration of refunds and returns.

**COUNT NINE: UNFAIR BUSINESS PRACTICES**
(California Business & Professions Code Section 17200)

153.    Plaintiff repeats and re-alleges paragraphs 1 through 152 as if fully set forth herein.

154.    AMAZON's conduct violates the unlawful, unfair, and fraudulent prongs of Business & Professions Code Section 17200.

155.    Plaintiff requests restitution and injunctive relief.

**COUNT TEN: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT**
(California Civil Code Section 51)

156.    Plaintiff repeats and re-alleges paragraphs 1 through 155 as if fully set forth herein.

-28-
COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

157.    AMAZON is a business establishment within the meaning of the Unruh Act.

158.    AMAZON's policies and practices — including locking disabled customers' accounts, erasing order history, refusing to investigate unauthorized activity, refusing refunds, blocking accounts with no alternative dispute mechanism, and using Plaintiff's disability against Plaintiff in court proceedings — intentionally discriminate against disabled customers. These practices deny disabled individuals equal access to AMAZON's services.

159.    Plaintiff requested that AMAZON provide an alternative accessible means of communication, including written correspondence and email communication. AMAZON denied these requests.

160.    AMAZON failed to make reasonable modifications to its policies, practices, and procedures to accommodate Plaintiff's known disabilities.

161.    AMAZON's repeated misgendering of Plaintiff — despite knowing Plaintiff's correct pronouns — constitutes discrimination based on gender identity in violation of the Unruh Act.

162.    AMAZON's conduct independently constitutes a violation of Title III of the Americans with Disabilities Act, 42 U.S.C. Section 12182. A violation of the ADA constitutes a per se violation of the Unruh Civil Rights Act under California Civil Code Section 51(f).

163.    Plaintiff requests actual damages, statutory damages of no less than four thousand dollars ($4,000) per violation under Civil Code § 52(a).

**COUNT ELEVEN: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**
(42 U.S.C. § 12181 et seq.)

164.    Plaintiff repeats and re-alleges paragraphs 1 through 163 as if fully set forth herein.

165.    AMAZON owns, operates, and controls a commercial website, customer service system, fraud dispute resolution process, and refund processing system that are inextricably tied to

-29-
COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

AMAZON's physical retail locations and fulfillment centers, including locations in the Eastern District of California. These systems facilitate access to AMAZON's physical goods and services and constitute a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §§ 12181(7)(F) and 12182(a).

166.    Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102. Plaintiff's documented disabilities — including cognitive processing disorders, memory impairment, PTSD, severe anxiety, and fibromyalgia — substantially limit major life activities.

167.    AMAZON failed to make reasonable modifications to its policies, practices, and procedures to accommodate Plaintiff's known disabilities, including by:

a. Refusing to provide alternative accessible means of communication, such as email or written correspondence, in lieu of AMAZON's phone-based customer service system;

b. Locking Plaintiff's accounts for approximately two years while continuing to process and fulfill unauthorized orders, thereby denying Plaintiff access to AMAZON's services during the period Plaintiff needed them most;

c. Erasing Plaintiff's order history after Plaintiff reported unauthorized activity, destroying records Plaintiff needed to dispute unauthorized charges;

d. Failing to provide an accessible investigation process for Plaintiff's reports of unauthorized account activity;

e. Failing to provide reasonable accommodations that would allow Plaintiff to return unauthorized items and obtain refunds.

168.    AMAZON's failure to make reasonable modifications denied Plaintiff full and equal enjoyment of AMAZON's goods, services, and facilities, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302.

169.    Plaintiff requests injunctive relief requiring AMAZON to provide accessible customer service and reasonable accommodations to disabled customers.

**VII. PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff respectfully requests that this Court:**

**DAMAGES:**

A. Award compensatory damages for economic losses in an amount to be proven at trial.

B. Award compensatory damages for emotional distress and physical harm in an amount to be proven at trial.

C. Award punitive damages under California Civil Code Section 3294.

D. Award restitution under California Business & Professions Code Section 17200.

E. Award statutory damages under the Unruh Civil Rights Act (minimum $4,000 per violation under Civil Code § 52(a)).

F. Award attorney's fees and costs under the Unruh Act and 42 U.S.C. § 12205.

**INJUNCTIVE RELIEF:**

G. Issue injunctive relief prohibiting AMAZON from:

- Continuing its false and threatening communications to Plaintiff.

- Deleting or suppressing any records related to Plaintiff's accounts.

- Failing to provide accessible customer service to disabled users.

- Misgendering Plaintiff or refusing to use Plaintiff's correct pronouns and honorifics.

H. Issue a preliminary injunction enjoining AMAZON from:

- Sending false or threatening communications to Plaintiff.

- Deleting or altering any records related to Plaintiff's accounts.

- Taking any adverse action against Plaintiff's accounts pending resolution of this action.

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF

- Misgendering Plaintiff or refusing to use Plaintiff's correct pronouns.

I. Issue an order requiring AMAZON to preserve all records related to Plaintiff's accounts, including order history, customer service communications, delivery records, locker access logs, and fraud investigation records.

**COSTS & INTEREST:**

J. Award post-judgment interest as provided by 28 U.S.C. Section 1961.

K. Award pre-judgment interest at the legal rate on all liquidated economic damages from the date each loss was incurred.

**GENERAL RELIEF:**

L. Grant such other and further relief as the Court deems just and proper.

**VIII. JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 28, 2026

Respectfully submitted,



/s/ Ale Amazon
ALE AMAZON
Plaintiff, Pro Se

**VERIFICATION**

I, ALE AMAZON, declare under penalty of perjury under the laws of the United States of America that the foregoing COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF is true and correct to the best of my knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Executed on June 28, 2026, at Folsom, California.

/s/ Ale Amazon
ALE AMAZON
Plaintiff, Pro Se

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF